UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/27/2024
```

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

                        Plaintiff,

   -against-

BRB CONSTRUCTION CORP., a/k/a MOY
CONSTRUCTION AND VILLAGE/TOWN OF
MOUNT KISCO, NEW YORK,

                        Defendants.

22-cv-5496 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Travelers Casualty Insurance Company of America ("Plaintiff" or "Travelers") commenced the instant action against Defendants BJB Construction Corp. a/k/a Moy Construction ("BJB") and the Town of Mount Kisco, New York (the "Town") seeking declaratory judgment, rescission of the insurance policies it issued to Defendant BJB, and reimbursement of defense costs.

Before the Court is Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Plaintiff's motion is DENIED.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements, declarations, and exhibits,[1] and are not in dispute, except where noted.

---

[1] Citations to Plaintiff's exhibits (Pl. Ex.) refer to the exhibits attached to the Declaration of Thomas A. Martin. (ECF No. 46.) Citations to the Town's exhibits (Town Ex.) refer to the exhibits attached to the Declaration of Jeffrey S. Matty. (ECF No. 50.) Citations to BJB's exhibits (BJB Ex.) refer to the exhibits attached to the Declaration of Jan A. Marcus. (ECF No. 53.)

Citations to the deposition of Bernard Begley refer to Pl. Ex. 12 and Town Ex. C. (ECF Nos. 46-12, 50-3, "Begley Tr.".) Citations to the deposition of deposition of Michael Villano Jr. refer to Pl. Ex. 13 and Town Ex. B. (ECF Nos. 46-13, 50-2, "Villano Tr.".)

### A. BJB's Application and Insurance Policies with Travelers

Defendant BJB Construction Corporation ("BJB") through its insurance agent Ovation Risk Planners ("Ovation") applied for insurance coverage with Plaintiff Travelers Casualty Insurance Company of America ("Travelers") for a policy term beginning 10/01/2018 and ending 10/01/2019. (ECF No. 47, Plaintiff's Rule 56.1 Statement "Pl. 56.1" ¶ 1; Pl. Ex. 7.) BJB's Travelers application was processed through a program called Select Accounts, which allows brokers/agents to apply for Travelers' commercial liability, property, workers compensation, and commercial automobile insurance policies. (Pl. 56.1 ¶ 2.)

The Travelers application asked whether BJB met Travelers's contractor eligibility requirements by not performing operations on Travelers's list of ineligible operations, products, and services for contractors (the "Ineligible Operations List"). (*See* Pl. Exs. 5, 7.) The Ineligible Operations List provides that "risks with the following operations should not be written as Contractors Pac$^{sm}$ accounts," including (1) "elevator or escalator inspections, installations, servicing or repair," (2) "drywall and plastering," (3) "debris removal," (4) "general contractors," and (5) "metal erection – any type other than purely decorative." (Pl. Ex. 5.) In its application, BJB represented that it was not performing any of the operations included on the Ineligible Operations List.[2] (Pl. 56.1 ¶ 11.) BJB's application also represented that BJB should be classified as a contractor for "driveways, sidewalks, or parking areas." (Pl. Ex. 7.)

---

[2] Plaintiff's Exhibit 7—which Plaintiff purports to be the completed insurance application submitted by Ovation on behalf of BJB—is practically illegible. The Court finds it difficult to identify BJB's answers to many of the questions in the application. However, BJB does not dispute that BJB's insurance application represented that it was not performing any of the operations included on the Ineligible Operations List. (ECF No. 56, BJB's Response to Plaintiff's Rule 56.1 Statement "BJB 56.1(c)" ¶ 11.) The Town disputes Plaintiff's statement because evidence shows that "what Travelers considers the application for insurance and what BJB believed to be its application are entirely different documents." (ECF No. 52, the Town's Response to Plaintiff's Rule 56.1 Statement "Town 56.1(c)" ¶ 11.) The Town does not elaborate further. The Court notes that BJB and Plaintiff submit the identical document as BJB's application. (*Compare* BJB Ex. D *with* Pl. Ex. 7.)

Despite these representations, at the time of its application with Travelers, BJB "had performed debris removal, drywall and plastering, and service and repair operations, and had served as the general contractor for a number of elevator installations." (Pl. 56.1 ¶ 15.) BJB also performed subcontracted work in excess of 25 percent of total receipts, drywall and plastering, and debris removal during the policy periods. (Begley Tr. 51:15-52:16; 53:2-8) Moreover, Begley testified that the work BJB was doing at the time of its application was not limited to driveways, sidewalks, and parking areas. (Begley Tr. 20:8-12.) While Begley did not discuss, ask, or tell anyone about making this representation on his application, Begley testified he knew that BJB's application classified the nature of BJB's work as driveways, sidewalks, and parking areas. (Begley Tr. 19:19-20:5; 20:13-18; 58:17-21; 58:25-59:4.)

As part of the application, Ovations also submitted a Contractors Supplemental Application on behalf of BJB. (Town Ex. A.) In the separate Contractors Supplemental Application, BJB represented that it performed 100% of its work as a general contractor. (*Id.*)

Based on BJB's application, Travelers issued a businessowners package policy for general liability and property coverage to BJB for the term 10/01/2018 and 10/01/2019, and then subsequently renewed BJB's policy for the periods 10/01/2019 to 10/01/2020; 10/01/2020 to 10/01/2021; and 10/01/2021 to 10/01/2022 (collectively, the "Policies"). (Pl. Exs. 6A-6D.)

### B. BJB's Contract with the Town and The Ensuing Accident

On October 7, 2020, BJB and Defendant Town of Mount Kisco (the "Town") entered into a construction contract for BJB to serve as general contractor for an elevator installation project. (Pl. 56.1 ¶ 31.) Kivanc Yoruk, an employee of BJB, served as the project manager for the project. (*Id.* ¶ 32.) He was injured during the elevator installation project. (*Id.* at ¶ 33.) Following his injury, Yoruk filed a claim against BJB, who immediately notified Ovation. (*Id.* ¶ 34.)

Through correspondence dated October 8, 2021, Travelers became aware that a Notice of Claim had been filed with the Town alleging that Yoruk was injured on a jobsite in Mount Kisco, New York. (*Id.* ¶ 36.) In that same correspondence, the Town requested it be deemed an additional insured under BJB's insurance policy with Travelers. (*Id.* ¶ 38.) During its investigation of Yoruk's claim, Travelers learned that Yoruk was working pursuant to a contract between BJB and the Town to install a new elevator shaft, which Travelers argues is an ineligible operation under the Policies. (*Id.* ¶¶ 39-40.) Travelers argues that had it known during the application process or at anytime prior to Yoruk's claim that BJB was performing ineligible operations, it would not have issued the Policies. On April 28, 2022, Travelers sent a notice of rescission to BJB in accordance with New York Insurance Law § 3105 ("Section 3105").

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999);

4

*see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

"New York law entitles an insurer to rescind an insurance policy—and the policy is deemed void *ab initio*—"'if it was issued in reliance on material misrepresentations.'" *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 6 F. Supp. 3d 380, 389 (S.D.N.Y. 2014), *aff'd sub nom. Cont'l Cas. Co. v. Boughton*, 695 F. App'x 596 (2d Cir. 2017) (citing *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 139 (2d Cir.2008)); *see Interboro Ins. Co. v. Fatmir*, 89 A.D.3d 993, 933 N.Y.S.2d 343, 345 (App.Div.2011). "The insurer bears the burden of establishing both

that there has been a misrepresentation and that the misrepresentation was material." *Scottsdale Ins. Co. v. Priscilla Properties, LLC*, 254 F. Supp. 3d 476, 481 (E.D.N.Y. 2017) (citations omitted).

    1. <u>Misrepresentation of Fact</u>

New York Insurance Law defines a "misrepresentation" as a false "statement as to past or present fact, made to the insurer by . . . the applicant for insurance . . . at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. Law § 3105(a).

Plaintiff argues BJB made false statements in its application when it represented that (1) "BJB was not performing any of the operations identified in Travelers' Ineligible Operations for Contractors [List] and (2) BJB should be classified as a contractor for 'driveways, sidewalks, or parking areas.'" (ECF No. 48, Plaintiff's Memorandum of Law in Support "Pl. Mem." at 11.) In response, the Town argues that (1) Plaintiff fails to identify where on the Ineligible Operations List subcontracting elevator work is specifically excluded and (2) neither the application or the Policies state that coverage is limited to "driveways, sidewalks, and parking areas." (ECF No. 51, Town Memorandum of Law in Opposition "Town Opp." at 3-4.)

BJB's Travelers application directly asks whether the applicant meets the eligibility requirements by not performing any operations on the Ineligible Operations List. (Pl. Ex. 7.) The application included the Ineligible Operations List. BJB admits that its application represented that BJB was not performing any of the operations included on the Ineligible Operations List. (BJB 56.1(c) ¶ 11.) BJB further admits that at the time of its application with Travelers, it "had performed debris removal, drywall and plastering, and service and repair operations, and had served as the general contractor for a number of elevator installations." (Pl. 56.1 ¶ 15; BJB 56.1(c) ¶ 15; *see also* Begley Tr. 52:12-25 (testifying that he performed debris removal prior to 2018 and

6

drywall and plastering from 2007 forward); 53:1-8 (testifying that "BJB was the general contractor for a number of elevator jobs").) Debris removal, drywall and plastering, general contractors, subcontracted work, and elevator installations, servicing, or repair are all included on the Ineligible Operations List. Finally, BJB admits that its President Bernard Begley signed each page of Ineligible Operations List. (Def. 56.1(c) ¶ 13.) Accordingly, BJB's application made false affirmative statements.[3]

That said, Defendants argue that even if there were misrepresentations in BJB's application, summary judgment is still inappropriate because the application language is ambiguous.[4] Specifically, both BJB and the Town argue that the approximately 83 operations on Ineligible Operations list are "confusing" and "ambiguous, detailing general categories of information without explanation or pertinent detail." (Town Opp. at 6; ECF No. 55, BJB Memorandum of Law in Opposition "BJB Opp." at 7.) "An answer to an ambiguous question cannot be the basis of a claim of misrepresentation where a reasonable person in the position of the insured could have rationally interpreted the question as the insured did." *GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroal*, 381 F. Supp. 2d 276, 274 (citing *Fanger v. Manhattan Life Ins. Co. of N.Y.,* 273 A.D.2d 438, 439, 709 N.Y.S.2d 622 (2000)). "Contract language is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (citing *Care Travel Co., Ltd. v. Pan American World Airways, Inc.,* 944

---

[3] In its opposition, the Town focuses on BJB's representations regarding its subcontracted elevator work. (*See* Town Opp. at 3-4.) The Court notes that the Town completely fails to address BJB's misrepresentations regarding its other work that fell within the Ineligible Operations List.

[4] BJB focuses its argument on the application materials themselves, rather than the question in its application that Travelers allege it answered with a false affirmative statement. The Court finds this argument misplaced. Plaintiff alleges only two misrepresentations—whether (1) BJB performed any of the operations identified in the Ineligible Operations List and (2) BJB should be classified as a contractor for driveways, sidewalks, or parking areas. The Court must determine whether these two questions are ambiguous.

7

F.2d 983, 988 (2d Cir.1991)). "New York law construes insurance contracts in favor of the insured and resolves all ambiguities against the insurer." *Admiral Ins. Co. v. Brookwood Mgmt. #10, LLC*, No. 16-CV-0437(SJF)(SIL), 2018 WL 5622595, at *20 (E.D.N.Y. Mar. 30, 2018) (citing *Vella v. Equitable Life Assurance Soc'y of U.S.*, 887 F.2d 388, 391 (2d Cir. 1989)). Whether a contract is ambiguous is a question of law for the court. *GuideOne*, 381 F. Supp. 3d at 274.

As a threshold matter, the Court is unpersuaded that the 83 operations on the Ineligible Operations List are ambiguous. Neither BJB or the Town provide alternative interpretations of the terms on the list. And merely because a term is broad does not make it ambiguous. Rather, "ambiguity only exists if a specific contractual term is susceptible to multiple readings." *Wiseman v. ING Groep, N.V.*, No. 16-CV-07587 (AJN), 2017 WL 4712417, at *6 (S.D.N.Y. Sept. 28, 2017).

Moreover, the Court is unpersuaded by BJB's argument that a prospective insured could reasonably interpret the application to ask only whether the insured was *currently* engaged in any ineligible operations, rather than if the business ever conducted those operations. The applicant asks a straightforward, unambiguous question—does the applicant perform any operations on the Ineligible Operations List? It is clear from the application that performing any operations on the list would render an applicant ineligible. It is unclear to the Court—and BJB provides no explanation—why an applicant may reasonably understand that it could perform those explicitly ineligible operations in the future during the policy period and remain eligible for coverage. Moreover, BJB admits that it had performed those operations in the past. (Begley Tr. 52:12-53:8 (testifying that BJB performed debris remove, drywall and plastering, and elevator work as a general contractor prior to the policy periods).)

Thus, even if BJB were not performing those operations at the time of its application, BJB reasonably should have anticipated performing those operations in the future. BJB did exactly that,

performing subcontracted work in excess of 25 percent of total receipts, drywall and plastering, and debris removal during the policy periods. (*Id.* 51:15-52:16; 53:2-8) The Court therefore finds that the application question inquiring whether BJB performed operations on the Ineligible Operations List is unambiguous.[5] Because BJB admits that at the time of its application it performed operations on the list, BJB made a misrepresentation on its application.

Having determined that BJB made a misrepresentation, the Court now determines whether the misrepresentation was material.

2. Materiality

"A misrepresentation is material if the insurer would not have issued the policy had it known the facts misrepresented." *Interboro Ins. Co. v. Fatmir*, 89 A.D.3d 993, 994 N.Y.S.2d 343, 345 (2011) (citations omitted). "To establish materiality as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, that show that it would not have issued the same policy if the correct information had been disclosed in the application." *Cont'l Cas. Co.*, 6 F. Supp. 3d at 390; *Wittner v. IDS Ins. Co. of New York,* 96 A.D.2d 1053, 466 N.Y.S.2d 480 (2d Dept.1983) ("Documentation, such as the insurance company's underwriting manuals, rules or bulletins, which pertain to insuring similar risks, should be submitted.") "Conclusory statements by

---

[5] The other ambiguity the Town identifies lies in whether the Ineligible Operations List includes subcontracted work. The Court understands the Town to argue that the application is ambiguous because it is unclear whether certain subcontracted work is an ineligible operation under the list. In response, Plaintiff argues that the Ineligible Operations List makes clear that each listed ineligible operation includes the subcontracting of said ineligible operation. (ECF No. 49, Plaintiff's Reply in Further Support "Pl. Reply" at 7.) The Court is persuaded by the Town's observation that the Ineligible Operations List includes "contractors - subcontracted work" as its own distinct category with five subcategories of specific types of subcontracted work. (*See* Town Opp. at 6; Pl. Ex. 14.) Moreover, certain subcategories (such as crop spraying, farm machinery, and hazardous materials) specify "by contractors" or "contractors" while others (including elevator or escalator work) do not. (*See* Pl. Ex. 14.) BJB does not argue or suggest that this ambiguity influenced its answer, but instead argues that it was ambiguous whether the question asked about current, prior, or future operations. Moreover, not all of the ineligible operations BJB admits to performing were subcontracted. Therefore, the Court's conclusion remains unchanged.

insurance company employees, unsupported by documentary evidence, are insufficient." *Cont'l Cas. Co.*, 6 F.Supp. 3d at 390 (citations omitted).

Generally, materiality is a question of fact for the jury. *Id.* (citation omitted). "However, where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." *Gemini Ins. Co. v. Integrity Contracting, Inc.*, No. 17-CV-1151 (AJN), 2019 WL 1099705, at *3 (S.D.N.Y. Mar. 8, 2019) (citing *Berger v. Manhattan Life Ins. Co.*, 805 F. Supp. 1097, 1102 (S.D.N.Y. 1992), in turn citing *Process Plants Corp. v. Beneficial Life Ins.* Co., 385 N.Y.S.2d 308, 310-11 (1st Dept. 1976)).

Travelers argues BJB's misrepresentations were material because the "evidence of Travelers's practices with respect to similar risks" and the declaration of Steve Ditota, a National Underwriting Officer for Select Accounts at Travelers, prove it "was entirely dependent on the accuracy of BJB's insurance application in issuing BJB's Policies." (Pl. Mem. at 14.) Travelers also points to its application "specifically reqest[ing]" information from BJB regarding the nature of its work in the application's eligibility section. (Pl. Mem. at 13.) As the Town observes (*see* Town Opp. at 5), this evidence is insufficient for Travelers to meet its burden.

In an attempt to satisfy its burden, Plaintiff submits (1) a declaration from Steve Ditota, one of Travelers's underwriters; (2) its Ineligible Operations list; and (3) BJB's application. Ditota's conclusory assertion that Travelers would not have issued the Policies to BJB if it had answered the application questions accurately, without supporting documentary evidence, is insufficient to satisfy Plaintiff's burden. Plaintiff fails to provide the requisite documentary evidence, as none of these documents constitute underwriting guidelines, policies, or rules. The application merely asks whether the applicant meets the eligibility requirements and references the Ineligible Operations List. The Ineligible Operations List simply states "risks with the following

10

operations should not be written as Contractors Pac<sup>sm</sup> accounts," without any additional information. (Pl. Ex. 5.) On their own, these documents "provide no useful information to the Court about the underwriter's decision making process for granting a policy." *Gemini Ins. Co.*, 2019 WL 1099705, at *3 (denying plaintiff's motion for summary judgment).

In all the cases cited by Plaintiff in its Reply, the insurer provided the underwriting guidelines. *See Union Mut. Fire Ins. Co. v. OHR Makif LLC*, No. 22-CV-2025 (JPO), 2023 WL 5576877, at *4 (S.D.N.Y. Aug. 29, 2023) (insurer submittted "detailed an unambiguous Underwriting Guidelines"); *Nabatov v. Union Mut. Fire Ins. Co.*, 203 A.D.3d 1052, 1054, 164 N.Y.S.3d 667 (2022) (insurer submitted both an affidavit from its underwriter and its underwriting guidelines which provided that swimming pools were "an unacceptable risk"); *John Hancock Life Ins. Co. v. Perchikov*, 553 F.Supp.2d 229, 240 (E.D.N.Y. 2008) (insurer submitted the underwriting policy in effect at the time of the insured's application for insurance).

Because Plaintiff does not provide any documentary evidence to prove its underwriting policies, Plaintiff fails to establish that BJB's misrepresentations were material. *John Hancock Life Ins. Co. v. Perchikov*, 553 F. Supp. 2d 229, 240 (E.D.N.Y. 2008) ("[C]onclusory statements are insufficient, and an insurer must offer proof of its underwriting practices.") (citing *Sonkin Assoc. Inc. v. Columbian Mut. Life Ins. Co.,* 150 A.D.2d 764, 541 N.Y.S.2d 611 (2d Dept.1989)). The Court thus denies Plaintiff's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED.

The Parties are directed to appear for a telephonic pre-trial conference on October 3, 2024 at 10:00 AM. To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound

(#) to enter the conference as a guest. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 45.

Dated:   August 27, 2024                        SO ORDERED:
           White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge